# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRIS PICENO,<br><br>               Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>               Defendant. | Case No. 1:18-CV-00653-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

       This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 9, 12).

       At a hearing on April 24, 2019, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

\\\

1

**A. ALJ's Weighing of Opinion by Dr. Koster, Plaintiff's Treating Physician**

Plaintiff first challenges the decision of the Administrative Law Judge ("ALJ"), on the ground that he improperly gave little weight to the opinions of the treating oncologist and hematologist, Dr. Koster. The Ninth Circuit has held regarding such opinion testimony:

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). The parties agree that, under this 9th Circuit caselaw, the clear and convincing standard applies to Dr. Koster's opinions regarding Plaintiff's physical limitations from idiopathic thrombocytopenic purpura ("ITP") because they were uncontradicted,[1] and that the specific and legitimate reasons standard applies to Dr. Koster's opinions regarding Plaintiff's mental limitations because they were contradicted by Dr. Michiel.

The ALJ gave the following reasons for the weight given to Dr. Koster's opinions

---

[1] The Commissioner has preserved its objection that the clear and convincing standard as set forth by the Ninth Circuit is "inconsistent with the deferential substantial evidence standard set forth in 42 U.S.C. § 405(g) and with agency regulations and rulings specifying the rationale its adjudicators should provide in support of their findings. See 20 C.F.R. § 404.1527." (ECF No. 17, at p. 13, n. 6).

regarding Plaintiff's physical limitations from ITP:

> This opinion was given little weight because by July 6, 2016, the claimant's platelet count had risen to a normal level of 208,000 (Exhibit 15F, p. 34). There was no subsequent evidence of relapse (Exhibits 22F, p. 1; 23F, p. 11; 24F). These limitations were in excess of the objective evidence, and the claimant had significant periods of remission from August 2014 to the present.

(A.R. 31). The Commissioner argues that these reasons are sufficient because they established that Plaintiff only suffered from two flare-ups of her condition and had no limitations during remission. Plaintiff argues that these reasons are insufficient because Plaintiff had limitations even during remission, in part to avoid the indisputably extremely disabling effects of a "flare-up," which consists of a highly dangerous drop in blood platelet level.

The Court begins its analysis by examining the documents cited by the ALJ in its reasons. Exhibit 15F, p. 34 is a lengthy description of the history of the present illness through July 6, 2016. It describes very serious effects from ITP before that time, including three relapses of chronic ITP, which required medications, blood transfusions, steroids and other treatment. As the ALJ noted, Plaintiff's platelet count as of the July 6, 2016 report was 208,000, which is far above her previous chronic levels. Regarding Plaintiff's current and future status, Dr. Koster wrote:

> We placed her on the immuran, pretty much took her off of prednisone and her platelet count has been on a steady rise. With the above treatment with the immuran, discontinuing the prednisone she is now at a platelet count of 208,000. I have asked her daughter to take one of the immuran tablets away, so she will be on 50mg once a day. We do still need to follow her on a weekly basis checking her lab results. If the patient continues to have normal platelet counts at 50mg per day, which we will probably keep her on for another week or two then we will discontinue that. As long as her platelet count is maintaining then she will not need any further gammaglobulin.

(A.R. 845). This note confirms a normal condition as of July 6, 2016 and indicates that he is hopeful that the medication regime may have stabilized Plaintiff going forward.

The ALJ next cited Exh. 22F, p. 1, a record from September 15, 2016, in which Dr. Koster reports as follows:

3

> Beatriz is 48 and has a diagnosis of chronic immune thrombocylopenic purpura. She has had 3 relapses. Today her blood work is normal. She is on no definitive medication for her chronic immune thromboclopenic purpura. We are seeing her on a monthly basis. No blood in her stool. No hematuria. No fevers, chills or night sweats. She does have chronic fatigue. She has diffuse arthralgias, myalgias and that is all a part of the disease. She was at Reedley Hospital a couple weeks ago and was short of breath. Her oxygen was 77% room air. She had all of the appropriate treatments.

This record indicates, and the ALJ stated, that Plaintiff had not had a relapse at that time. But it also indicated that Plaintiff suffered from chronic fatigue and low oxygen even with normal blood work and had gone to the hospital as a result. (A.R. 1102).

The ALJ next cited Exhibit 23F, p. 11, which is a note from a different doctor, Jacob Peters, from December 6, 2016. This record has very little relevant information as it briefly reports on several medical conditions. Regarding ITP, it states "The patent also presented with thrombocytopenia. Currently, is being treated with azathioprine. Past treatment has included a splenectomy and treatment with Retuximab. On assessment the patient has ITP. Recommendations given included continuing care with the hematologist." (A.R. 1115). Later it also states "The CBC was normal except for 670.000 platelets." It does not describe why this number was abnormal or if it resulted in any symptoms.

Lastly, the ALJ cited to Exhibit 24F, which appears to be a laboratory test order for "sedimentation rate." It gives a result of "6" with a reference range of 0-19. (A.R. 1129). It contains no analysis of these results, and the Court cannot interpret them.

During oral argument, counsel agreed that factually Plaintiff has had few very extreme flare-ups and otherwise been in remission. However, they disagreed whether Dr. Koster's limitations were appropriate during times of remission. Plaintiff's counsel pointed the Court to page 1013 of the record, where Dr. Koster wrote on July 7, 2016 that "Beatris has immune thrombocytopenic purpura in which she has had four indecencies. She bruises easily and when she gets over exerted her platelets drop." (A.R. 1013). Plaintiff's counsel also pointed to a record from March 16, 2016 from Dr. Koster, which states "she has gone back into a full state of remission, but Beatriz has had numerous problems since the spleen was out and since it relapsed she just recently got out of the hospital for a double pneumonia and pulmonary embolus. She is

on blood thinners. She is better, but according to her daughter she lost a lot of ground in terms of strength and has had a lot of physical therapy to make it possible for her to start ambulating again . . . ." (A.R. 821).

Upon consideration, the Court finds that the ALJ did not provide clear and convincing reasons for rejecting the opinion of Dr. Koster. The reasons given and evidence cited establish that Plaintiff's condition was largely in remission. However, the ALJ failed to address if Plaintiff suffered from limiting impairments during the time of remission. The records of Dr. Koster indicate that Plaintiff suffered from some limiting impairments from the condition, including shortness of breath and inability to safely exert herself.

That said, the Court does not find that all of Dr. Koster's limitations should be credited. The Court agrees with the portion of the ALJ's reasoning that "[t]hese limitations were in excess of the objective evidence." It is difficult to evaluate this reason because the ALJ did not point to any specific limitations or specific objective evidence. It is also difficult because many of the specific limitations cited by the ALJ in this section come from the mental residual functional capacity questionnaire (Exhibit 25F), which concerns mental functioning, rather than physical functioning.

Accordingly, the Court will remand to the ALJ to consider what limitations should be included in the RFC to reflect Plaintiff's physical impairments due to ITP even when the ITP is in remission.

Turning to Dr. Koster's opinions regarding Plaintiff's mental limitations due to ITP, the ALJ provided the following reasoning:

> This opinion was given little weight because the claimant's mental impairment was stable with limited medication treatment. Although there was evidence that the claimant had moderate limitation in concentration, persistence, and pace, these limitations were otherwise in excess of the medical evidence.

(A.R. 32).

This reasoning is admittedly brief, without any citations to evidence. Nevertheless, in light of the contradictory finding by Dr. Michiel, Dr. Koster's lack of expertise in this area, and

5

the arguably contrary evidence cited by counsel for the Commissioner at oral argument, the Court finds that this reasoning is legally sufficient to affirm the ALJ regarding the weight given to Dr. Koster's opinion regarding the limitations due to Plaintiff's mental impairments from ITP.

### B. The ALJ's Treatment of Plaintiff's Subjective Symptom Testimony

Plaintiff next challenges the ALJ's evaluation of Plaintiff's testimony, only on the basis that it failed to account for Plaintiff's exemplary work history prior to her alleged disability. However, the Court agrees with the Commissioner that an ALJ is not legally required to discuss a plaintiff's work history in assessing her symptom testimony. (*See* authorities cited in ECF No. 17, at p. 19). Given that the ALJ provided other reasons for its decision, which were not challenged by the Plaintiff, the Court will not reverse on this basis.

### C. Conclusion

For the foregoing reasons, the Court remands this case to the ALJ and directs the ALJ upon remand to credit Dr. Koster's opinions regarding Plaintiff's physical limitations due to ITP during periods of remission and evaluate whether such additional limitations reflected therein would render her disabled as defined in the Social Security Act.

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: __**April 26, 2019**__                    /s/ *Eric P. Groj*
                                                UNITED STATES MAGISTRATE JUDGE